IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONNIE S. MOORE                     :
#14980-056
    Plaintiff                          :

    v.                             :        CIVIL ACTION NO. JFM-06-911

TIM M. SMITH, et al.               :
    Defendants               ..................

## MEMORANDUM

Before the Court is an action filed by plaintiff pro se pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1] Plaintiff Donnie S. Moore is an inmate at the Federal Correctional Institution (FCI) in Cumberland, Maryland.[2] Defendants, Timothy M. Smith, Garage Foreman at FCI, J. Howard Losiewicz, Disciplinary Hearing Officer, and Richard Shook, Health Service Administrator, by their counsel, have filed a motion to dismiss the complaint, or in the alternative, for summary judgment.[3] Plaintiff has also filed a motion for

---

[1] Moore brings this action against defendants in their individual and official capacities. Complaint at 2 ¶ 7. A *Bivens* action cannot lie against federal agents acting in their official capacities. *See Doe v. Chao*, 306 F. 3d 170, 184 (4th Cir. 2004). A suit against a federal officer in his official capacity is equivalent to a claim against the United States. *Cf. Will v. Dept. of State Police*, 491 U.S. 58, 71 (1989). Moore does not allege and defendants do not concede that there has been a waiver of sovereign immunity in this action. To the extent these claims are brought against defendants in their official capacity, they are barred by the doctrine of sovereign immunity.

[2] On November 9, 1994, after Moore pleaded guilty to possession with intent to distribute cocaine base before the United States District Court for the Eastern District of North Carolina, that court sentenced him to 188 months imprisonment. Respondents' Ex. 1, Attachment B.

[3] Defendants have twice filed incomplete responsive pleadings in this matter. All references to defendants' pleadings will be made to submissions filed under "Second Revised Memorandum of Law in support of Motion to Dismiss or for Summary Judgment." Paper No. 17 and Attachments. The court notes there remain uncorrected errors in the most recently revised pleadings.

summary judgment to which defendants have filed a response in opposition.

Defendants rely on materials beyond the scope of the complaint, and the motion shall be construed as one for summary judgment pursuant to Fed R. Civ. P. 56. No hearing is necessary. *See* Local Rule 105.6 (D. Md.). For the reasons set forth below, the court will grant defendants' motion for summary judgment and enter judgment in favor of defendants and against plaintiff. [4]

## I. Claims Presented

Moore presents the following claims: 1) defendant Smith violated his right to due process under the Fifth Amendment when he "snatched" plaintiff's inmate identification card from his hand. Complaint at ¶ 11; 2) defendant Smith violated plaintiff's Eighth Amendment right against cruel and unusual punishment when Smith charged him with assault, which resulted in plaintiff's placement in solitary confinement, *see id.*; 3) defendant Losiewicz violated plaintiff's Eighth Amendment rights when he "overlooked important facts such as witnesses and testimony," found plaintiff guilty of assault, and sanctioned him with loss of good conduct time, s*ee id.*; and 4) defendant Shook refused to provide plaintiff appropriate medical care for his chronic back condition in violation of the Eighth Amendment. Plaintiff requests declaratory relief, transfer to a medical facility, and compensatory and punitive damages. Complaint at ¶¶ 15-18.

---

[4] The court will deny plaintiff's motion for summary judgment for the reasons stated herein. Additionally, the court will deny plaintiff's motion to appoint counsel. No exceptional circumstances are presented here. The issues presented were not unduly complex and plaintiff adequately articulated his claims for redress. *See* 28 U.S.C. § 1915(e)(1); *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984). Plaintiff's pending motion for entry of default judgment lacks factual or legal basis and it will also be denied.

**II. Factual Background**

    **A. Incident Report**

Defendants reference Incident Report Number 1397812 [5] in support of their dispositive motion. In the report, Timothy Smith describes the incident as follows:

> On Tuesday at 9:20 a.m. I gave inmate Moore a direct order to get out of bed. Inmate Moore was very loud and aggressive toward me about making his bed. Inmate Moore stated to me that he wasn't going to make his bed and I needed to do what ever I needed to do, because I'm not making my bed. Inmate Moore was directed to give me his Id card. Inmate Moore got out of bed and went to his locker in aggressive [sic] manner and open his locker door aggressive, [sic] threw his right arm straight out at me with his ID. I took the ID. When I turned to leave Inmate Moore pushed me in the back and stated 'STAY THE FUCK OUT OF MY ROOM.'

Plaintiff's Exhibit B, Paper No. 14.

Moore's responded to the charges: "I don't talk like that. I was on my bed covered with my blanket. I gave him my ID and he snatched it out of my hand. I never swore at him and I never pushed him." *See id.* The incident report was reviewed by the Unit Discipline Committee and the Disciplinary Hearing Officer. On November 1, 2005, Plaintiff received advanced written notice of the charges against him (a copy of the incident report) and was advised of his rights before the Discipline Hearing Officer by corrections staff on November 4, 2005. *See id; see also* Plaintiff's Exhibit A, Paper No. 14. Plaintiff requested a staff representative and witnesses. *See id.*

---

       [5] Although repeatedly referenced in the Declaration of Alecia Sankay, Paralegal Specialist and Administrative Remedy Clerk at the Mid-Atlantic Regional Office of the Bureau of Prisons as Attachment C, it does not appear that Attachment C was appended to the dispositive pleading. The court will refer to the Incident Report filed by Moore with the complaint and also in support of his motion for summary judgment. Complaint, Attachment; Paper No. 14, Attachment B.

On November 11, 2005, defendant Howard Losiewicz, a discipline hearing officer, conducted a hearing on the minor assault charge against Moore.  During the hearing, Moore waived his right to call witnesses, but was represented by a prison staff member.  *See id.* Losiewicz considered Moore's testimony, the staff representative's testimony, and the statement of the reporting officer, and concluded that Moore had committed offense code 224, Assault on a Staff Member.  He imposed the following sanctions: 1) loss of fourteen days good conduct time; seven days disciplinary segregation; and ten days disciplinary segregation suspended pending one hundred eighty days clear conduct.  *See id.*

Moore appealed  the decision to the Mid-Atlantic Regional Office on December 19, 2005.  Defendants' Exhibit 1, Attachment F, Paper No. 17. The appeal was denied. The Central Office denied Moore's subsequent appeal of the Regional Office decision.  *See id.*

**B.  Medical Claims**

Moore claims that he is receiving inadequate medical care for his chronic back condition. He contends that his condition has worsened, his medical work restrictions need to be updated, and he has been denied a current medical evaluation.[6]  Complaint, at 2.

 Defendants' verified  exhibits show that on April 30, 2004, Moore's primary care provider (PCP) examined him at sick call.  Declaration of Dr. Moubarek, Exhibit 2, ¶ 5. Attachment A.  The PCP noted that Moore requested a medical duty status slip indicating that he

---

[6]  Moore has filed copies of 1999 medical records from FCI Edgefield in which the listed "impression" is degenerative disc disease.  The recommendation was "occasional nonsteroidals, occasional stretching, light to moderate work. Not a lot of bending and stooping. Use the back brace whenever he is doing a lot of work just to prevent the discs from being bothered." Plaintiff's Exhibits, Paper No. 14; *see also* Declaration of Dr. Moubarek, Exhibit 2, ¶ 3.

4

could lie down with his legs elevated at any time secondary to chronic lower back pain. *See id.* In addition, Moore requested an MRI to "check the status of his back." *Id*. Plaintiff complained he suffered from constant lower back pain. The PCP noted, however, that Moore's gait was normal, and he was able to get into and out of a sitting position without difficulty. At the time of his examination, Moore's Medical Duty Status ( MDS) prescribed no prolonged standing, stooping or lifting of weight greater than ten pounds. The PCP found nothing to warrant another MRI or a change in Moore's MDS, and advised Moore to return to the medical services unit as needed. *See id.* at ¶¶ 3, 5, 11.

Moore has visited sick call or the Chronic Care Clinic at FCI Cumberland approximately nine times since his April 30, 2004, examination. *See id.* at ¶ 6. He complained about lower back pain during three of these visits, and was given analgesics, including Indocin, a prescription medication. *See id.* ¶¶ 5-10. At March 2, 2005, and August 2, 2005, appointments at the Chronic Care Clinic at FCI Cumberland, Moore complained of lower back pain, and requested and was prescribed Indocin. *See id.* at ¶ 7 & 8. At the August 2, 2005, appointment, the physician's assistant noted that Moore did not exhibit any difficulty standing up from a seated position nor did he walk with difficulty. *See id.* at ¶ 8. Additional examination revealed minimal tenderness in his lower back regions and no spasms. *See id.* Moore's most recent medical visits occurred on March 6, 2006, and April 10, 2006. The purpose of these visits was to monitor Moore's blood pressure. Moore did not complain of back pain at either appointment. *See id at ¶* 10.

### C. Administrative Remedy Requests

Pertinent to this action are two separate Administrative Remedy Requests filed by

5

Moore. On May 7, 2004, Moore filed Request for Administrative Remedy, #335176-F1 seeking an MRI of his back citing his purportedly deteriorating back condition and need for additional work restrictions. Defendants' Exhibit 1, Declaration of Alicia Sankey, Attachment D at 3. On June 8, 2004, Warden Stephen M. Dewalt denied the request for an MRI. Defendants' Exhibit 1, Attachment D at 5. Moore appealed the Warden's decision to the Regional Office. The appeal was denied on July 20, 2004. *See id.* Attachment D at 2. Moore did not seek further appeal.

In Administrative Remedy #405805-F-3, Moore filed a request for a medical transfer and an MRI for his back condition. *See id.* Attachment E, Request for Administrative Remedy #405805-F-3. Moore submitted this request three times at the institutional level. It was first rejected because he had not attempted informal resolution, and did not submit the request through a counselor or other authorized person. *See id.* ¶ 8. The second Administrative Remedy attempt (#405805-F-2) was rejected because the Attempt at Informal Resolution attached raised different issues from those presented in the Administrative Remedy request. FCI Cumberland closed the third submission, #405805-F-3 on March 27, 2006, responding to and denying only those issues raised in the Attempt at Informal Resolution, *i.e.* his request for a new evaluation of his back condition and revisions to his medical restrictions. *See id.* Attachment E at 4. Moore did not file an appeal.

### III.   Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under 42 U.S.C. § 1983 or any other Federal law, by "a prisoner confined in any jail, prison,, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This means that a federal prisoner must

first present his grievance through all levels of the Bureau of Prison's Administrative Remedy Program before they may be raised in federal court. *See* 28 C.F.R. § 542.10 *et seq.*[7]

Administrative exhaustion applies to all prisoner suits relating to prison life. *See Porter v. Nussle*, 435 U.S. 516, 532 (2002). Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint. *See Booth v. Churner,* 532 U.S. 731, 741 (2001). "Proper exhaustion [which] demands compliance with an agency's deadlines and other critical procedural rules...." is required." *Ngo v. Woodford,* _U.S._ 126 S.Ct. 2378, 2386 (2006). The exhaustion requirement gives prison officials an opportunity to correct problems before the matter is presented in federal court, and creates a useful record if later judicial proceedings are conducted. *See Ngo* 126 S.Ct. at 2385.

**IV. Standard of Review**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. A fact is material for purposes of summary judgment if when applied to the substantive law, it affects the outcome of the litigation. *See Anderson*, 477

---

[7] The Bureau of Prisons has a three-tiered administrative grievance process. An inmate may complain about any aspect of confinement by first seeking to informally resolve the complaint at the institutional level. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. The complaint is then investigated and a written response provided to the inmate. The inmate may appeal the decision to the Regional Director. If dissatisfied with the regional response, the inmate may appeal to the General Counsel, the final level of agency review. *See* 28 C.F.R. § 542.10 *et seq*.

7

U.S. at 248. "Summary judgment is not appropriate when there is an issue of fact for a jury to determine at trial, which is the case when there is sufficient evidence favoring the non-moving party upon which a jury can return a verdict for that party." *Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir. 1991).

A party opposing a properly supported motion for summary judgment bears the burden of establishing the existence of a genuine issue of material fact. *See Anderson*, 477 U.S. at 248-49. This burden "is particularly strong when the nonmoving party [also] bears the burden of proof." *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990). The nonmovant "cannot create a genuine issue of fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ.P. 56(e); *see Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252; *Shealy,* 929 F.2d at 1012. Furthermore, the facts, as well as the inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matusushita*, 475 U.S. at 576. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id*. at 587.

**IV.   Discussion**

   **A.  Claims Against Richard Shook**

Defendants argue that Moore's claims should be dismissed for failure to exhaust administrative remedies.  In this case, Moore has filed two administrative remedies concerning pertaining to his request for a medical transfer, MRI, and revised medical restrictions.  Both requests were denied at the institutional level.   Defendants Exhibit 1, Attachments D & E.  Neither decision was appealed to the third and final level of the administrative remedy process.[8]  Consequently, Moore has yet to exhaust available administrative remedies in regard to his medical claims against Richard Shook, Health Services Administrator at FCI Cumberland.

To the extent that Moore faults Richard Shook with violating his constitutional rights for failure to provide an MRI, adjust his medical restrictions, and transfer him to a medical facility, the claim fails because respondeat superior cannot from the basis of a claim for a violation of a constitutional right in a *Bivens* suit. *See Rizzo v. Good*, 423 U.S. 362 (1976).  Liability in a Bivens action is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citations omitted).  In this matter, it is clear that the medical decisions about which Moore complains were made by medical practitioners, not prison administrators.  Moore neither asserts nor demonstrates that Shook had any personal involvement in the medical decisions that allegedly violated his constitutional rights.  Accordingly, the claims against Shook will be dismissed.

In regard to  Moore's constitutional claim against Shook for alleged violations of the

---

[8]    Moore does not allege, nor does the record suggest, that his efforts to pursue administrative remedies were impeded by defendants or other prison officials.

Eighth Amendment's prohibition against cruel and unusual punishment, this claim lacks factual and legal merit. First, Moore has not demonstrated that Shook acted with deliberate indifference to his medical needs. Second, construing these claims in the light most favorable to plaintiff, the record evidences disagreement with medical decisions, but does not support a claim for constitutionally inadequate medical treatment.

In order to state a constitutional claim under the Eighth Amendment for denial of medical care a prisoner must demonstrate that the defendant's acts or omissions amounted to deliberate indifference to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976). In essence, the treatment rendered must be so grossly incompetent or inadequate as to shock the conscience or to be intolerable to fundamental fairness. *See Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." *Id.* at 851. Reckless disregard occurs when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U. S. 825, 837 (1994). Thus, a health care provider must have actual knowledge of a serious condition, not just knowledge of the symptoms. *See Johnson v. Quinones,* 145 F.3d 164, 168 (4th Cir. 1998). Furthermore, mere negligence or malpractice does not rise to a constitutional level. *See Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Donlan v. Smith*, 662 F. Supp. 352, 361 (D. Md. 1986).

Moore has been diagnosed with a degenerative back condition, but his exams do not reveal any signs of further degeneration or otherwise indicate the need for additional medical restrictions, testing, or transfer to a medical center. Moore's medical records show that he is

being treated for his back pain at FCI Cumberland as needed.  Defendants' Exhibit 2, Attachment

A.  There is no basis presented here to find that Moore is being deprived of treatment for his medical needs.  After reviewing the pleadings, affidavits, and other exhibits,  the court concludes that the plaintiff has failed to proffer evidence sufficient to establish that the acts or omissions of Richard Shook amounted to deliberate indifference to his medical needs.   Plaintiff's complaint is essentially that he disagrees with the course of his medical treatment. No constitutional violation has been shown.[9]

### B. Claims Against Timothy Smith and Howard Losiewicz

Moore claims that Smith and violated his constitutional rights when he entered his cell, threatened to write him up because his bed was unmade, and "snatched"  the identification card from his hand, resulting in his solitary confinement, loss of good conduct time, and  loss of his "transfer to a Low Correctional Institution."  Plaintiff's Motion for Summary Judgment at 2, Paper No. 14.  Moore accuses Losiewicz of "bias" without "weighing the evidence that was presented to him, such as eye witnesses testimony, plus the testimony of a professional person, such as a case manager.  Defendant allowed one of my witnesses to transfer and the other one he claimed he could not find." *Id.*[10]

---

[9]   Defendants also raise the defense of  qualified immunity citing the absence a violation of a constitutional right. *See Slattery v. Rizzo,* 939 F. 2d 213, 216 (4th Cir. 1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *see also Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding that if the allegations as established do not violate a constitutional right, then no additional inquiries need to occur regarding qualified immunity).

[10]   As noted earlier, Moore waived his right to present witnesses.  Discipline Hearing Officer Report, Paper No. 14, Attachment 2. Moore presents no substantiation in support of his

11

In prison disciplinary proceedings where a prisoner faces the possible loss of good conduct credits he is entitled to certain due process protections. *See Wolff v. McDonnell*, 418 U.S. 539 (1974). These include advance written notice of the charges against him, a hearing, the right to call witnesses and present evidence when doing so is not inconsistent with institutional safety and correctional concerns, and a written decision. *See id*. at 564-571. Substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence." *See Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 455 (1985).[11] The disciplinary proceedings in this case clearly satisfy this standard.

## V.  Conclusion

For these reasons, the court will grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment. Judgment will be entered in favor of defendants and against plaintiff.

October 31, 2006                              /s/
Date                                          J.  Frederick Motz
                                              United States District Judge

---

insinuation that one of his witnesses was "allowed" to transfer or could not be found. *See id.* Contrary to Moore's allegations, the record does not show evidence of bias by the hearing officer. Disciplinary Hearing Officer Losiewicz considered Moore's statements, as well as those of Officer Smith, and Case Manager Golub. "Based on the greater weight of the evidence," the hearing officer found Moore had perpetrated the assault. *See id.*

[11]      *See supra* note 9.